**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Antoinette Blevins JOHNSON, Defendant,**

**Central Bank of the South, Intervenor-Appellant.**

No. 91-7576.

United States Court of Appeals, Eleventh Circuit.

Feb. 12, 1993.

Robert H. Adams, Najjar Denaburg, P.C., Walter McArdle, Birmingham, AL, for Central Bank of the South.

Frank W. Donaldson, U.S. Atty., Birmingham, AL, Shirley I. McCarty, Asst. U.S. Atty., Sara Criscitelli, U.S. Dept. of Justice, DC, for U.S.

Before HATCHETT, Circuit Judge, HENDERSON and ESCHBACH *, Senior Circuit Judges.

HATCHETT, Circuit Judge:

██ As a matter of first impression in this circuit, we hold that the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579 and 3580 ("Act") does not afford a victim under the Act standing to appeal the rescission of a restitution order.

## FACTS AND PROCEDURAL HISTORY

On April 30, 1987, a grand jury charged Antoinette Blevins Johnson with 30 counts of forging endorsements of and cashing social security checks made payable to a deceased relative, in violation of 18 U.S.C. § 495. On May 19, 1987, the district court notified County Market, SouthTrust Bank, and Central Bank of the South ("Bank"), three financial institutions to whom Johnson allegedly passed these worthless checks, that pursuant to the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579 and 3580, they could intervene to protect their rights; otherwise, they would have no right to appeal from an order denying them restitution.** On June 5, 1987, Bank, the appellant in this case, moved to intervene, and the district court granted Bank's petition.

After the district court set the case on its consent docket, Johnson and the government filed a plea agreement. In the plea agreement, Johnson agreed to plead guilty to Counts XXIX and XXX, and the government agreed to dismiss the other twenty-eight counts. Johnson also agreed to make restitution to the three victims pursuant to the Act. The district court accepted the plea agreement.

On June 30, 1987, on Count XXIX, the district court sentenced Johnson to one year and one day of imprisonment. As to Count XXX, the district court suspended the sentence and placed Johnson on probation for five years, subject to the special condition that she make restitution pursuant to the Act in the amount of $24,781.00. Of that amount, Johnson owed Bank $18,-273.00. The district court ordered her to begin monthly payments of $125.00 on the tenth of each month after her release from custody.

After Johnson's release from custody in April of 1988, she began her five-year probation period. During 1988 and 1989,

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

** The Act has been recodified as 18 U.S.C. §§ 3663 *et seq.*

Johnson failed to make any payments of the ordered restitution, and in 1990, she made three installments of $50 each. Because of Johnson's inadequate payments of restitution, her probation officer filed a petition for revocation of probation. On June 12, 1991, the district court held a revocation hearing at which all of the victims appeared. Because the district court found that Johnson failed to make a bona fide attempt to pay the restitution, it revoked her probation, rescinded the restitution obligation, and resentenced Johnson to six months imprisonment on Count XXX. (*United States v. Johnson*, 767 F.Supp. 243 (N.D.Ala.1991)). After the district court voided the restitution order, Bank filed this appeal.

## CONTENTIONS

Bank contends that the restitution order constituted a civil judgment; consequently, the district court had no authority to rescind it. Bank argues that the Act provides victims with a remedy to eliminate the need for victims to initiate civil suits to collect restitution. It can properly intervene, says Bank, because Congress intended to permit private enforcement of the Act. Additionally, Bank argues that it has the right to appeal because the court allowed it to intervene and awarded it restitution without objection from Johnson.

The government contends that Bank, although a victim, has no standing to appeal. The government argues that Bank fails to satisfy Article III requirements of standing because Bank has not been prosecuted or threatened with prosecution. In addition, the government argues that Congress has not exercised its authority to grant a right of action for the victims through a specific statutory provision.

## ISSUE

■ The sole issue we address is whether Bank, an intervenor, has standing to appeal the district court's rescission of the restitution order.

## DISCUSSION

The issue is one of first impression in this circuit. *See United States v. Franklin*, 792 F.2d 998 (11th Cir.1986) (specifically declining to address whether an appeal may be taken from an order denying intervention or, if intervention is permitted, whether an appeal may be taken from the district court's final disposition of the restitution issue). *But see United States v. Grundhoefer*, 916 F.2d 788 (2d Cir.1990) (holding that an intervening trustee lacked standing under the Act to challenge the restitution order because he failed to show an Article III injury, and the Act did not provide a private remedy for victims denied restitution.)

Every litigant must possess standing to sue in the United States courts. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475–76, 102 S.Ct. 752, 760–61, 70 L.Ed.2d 700, 711–12 (1982). Standing involves both constitutional requirements and prudential limitations. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343, 354 (1975). The constitutional requirements are derived from Article III, Section 2, Clause 1 of the United States Constitution, and the prudential considerations are rules of judicial self-governance. *Warth*, 422 U.S. at 497–99, 95 S.Ct. at 2204–05, 45 L.Ed.2d at 354.

Article III requires that United States courts address only "cases and controversies." The Supreme Court has held that this constitutional requirement of justiciability allows courts to address only questions presented in an adversarial context and seeks to insure that the judiciary will not encroach upon the powers of the other branches of government. *Flast v. Cohen*, 392 U.S. 83, 94–95, 88 S.Ct. 1942, 1949–50, 20 L.Ed.2d 947, 958–59 (1968). Recently, the Court affirmed the requirement that before a federal court may address the merits of a legal claim, the litigants must establish standing to sue, which serves to properly identify Article III "cases and controversies." *Whitmore v. Arkansas*, 495 U.S. 149, 154, 110 S.Ct. 1717, 1722, 109

L.Ed.2d 135, 145 (1990). The threshold question to determine standing is "whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth*, 422 U.S. at 498–99, 95 S.Ct. at 2205, 45 L.Ed.2d at 354. Thus, in this case, Bank must show that it has suffered a threatened or actual injury resulting from the putatively illegal action of the district court. *Warth*, 422 U.S. at 499–500, 95 S.Ct. at 2205–06, 45 L.Ed.2d at 355; *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148–49, 35 L.Ed.2d 536, 540 (1973). Also, Bank must show that the alleged injury is traceable to the putative conduct of the defendant and that a favorable decision would most likely redress the injury. *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41, 96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450, 462 (1976).

Bank argues that it did not pursue claims against Johnson because it relied on the plea agreement, which indicated Johnson's willingness to pay restitution, and because of the Act's language that indicates that restitution is enforceable as a civil judgment. Bank also argues that it has suffered an injury that is directly traceable to the rescission of the restitution order. Bank asserts that it now must sue Johnson to collect restitution, but the statute of limitations has barred some of its claims. Bank also argues that the 18 U.S.C. § 3664(e) provision, which prohibits a defendant from denying the allegations of the crime in a later federal or state civil proceeding, is eviscerated because of the district court's rescission of the restitution order.

We conclude that Bank has not suffered an injury recognized in the law. In *Linda R.S.* the Court stated that generally a citizen lacks standing to contest the policies of a prosecuting attorney when the citizen has not been prosecuted or threatened with prosecution. *Linda R.S.*, 410 U.S. at 619, 93 S.Ct. at 1149. As the government properly argues, the court revoked Johnson's probation; therefore, she suffered a direct injury, not Bank. Bank, as a collateral entity to the proceedings, has not suffered a direct injury adequate to satisfy the Article III constitutional requirements. *See Grundhoefer*, 916 F.2d at 791 (finding that collateral individuals to the proceeding have not suffered an Article III injury). All of Bank's interests are separate and distinct from the interests of the government and Johnson in this criminal case.

Bank also seeks to bring itself within the prudential limitation known as the "zone of interest," within which its claim is one that the Act protects. *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556, 569 (1984). In statutes in which Congress grants a right of action, expressly or through clear implication, a plaintiff may have standing. *Warth*, 422 U.S. at 501–02, 95 S.Ct. at 2206–07, 45 L.Ed.2d at 356. The "zone of interest" test focuses on congressional intent. *Clarke v. Securities Industries Assoc.*, 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757, 769 (1987). Bank argues that it has standing to appeal because 18 U.S.C. § 3663(h)(2) states that restitution is to be enforced in a manner similar to a judgment in a civil suit; hence, the district court had no authority to rescind the restitution order.

Congress made clear the extent and purposes of the Act. No provision, either explicitly or implicitly, suggests that Congress intended to provide victims with a private remedy to sue or appeal. *See,* H.Rep. No. 681(I), 101st Cong., 2d Sess. 177 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6583; H.Rep. No. 390, 100th Cong., 1st Sess. 11 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2137, 2147; H.Rep. No. 1030, 98th Cong., 2d Sess. 86 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3269; and S.Rep. No. 532, 97th Cong., 2d Sess. 31 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2515, 2537.

Instead, the legislative history supports the district court's decision. According to the legislative history, the Act provides for "split sentences," where after a period of incarceration, the felon can either pay restitution in a responsible manner or face a longer term of imprisonment. 1982 U.S.C.C.A.N. 2515, 2537. In this case, the district court conditioned Johnson's proba-

tion on her payment of the restitution. Because she failed to pay in a responsible manner, the district court revoked probation, which included the restitution order, and sentenced her to a longer term of imprisonment. *See* 1984 U.S.C.C.A.N. 3182, 3268–3269 (stating that if the court places a defendant on probation, payment of restitution is a condition of probation and failure to pay restitution is a violation of probation).

Bank is correct in pointing out that restitution may be imposed independently of probation. *United States v. Young*, 953 F.2d 1288, 1289 (11th Cir.1992) (quoting *United States v. Barnette*, 800 F.2d 1558, 1571 (11th Cir.1986) (quoting 1982 U.S.C.C.A.N., 2515, 2536), *cert. denied*, 480 U.S. 935, 107 S.Ct. 1578, 94 L.Ed.2d 769 (1987); *United States v. Satterfield*, 743 F.2d 827, 834 (11th Cir.1984), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985); 1982 U.S.C.C.A.N. at 2538. In this case, however, the district court expressly included the restitution order as a special condition of probation; hence, the restitution order could be revoked because of Johnson's failure to comply with the probation order. 18 U.S.C. § 3663(g).

Moreover, simply because 18 U.S.C. § 3663(h)(2) states that restitution is enforceable in the same manner as a judgment in a civil action, does not transform restitution into a civil judgment. *See Satterfield*, 743 F.2d at 836–37 (stating that Congress drafted the restitution provisions indicating that "restitution would be imposed as a criminal, rather than a civil, penalty"); *United States v. Brown*, 744 F.2d 905, 909–10 (2d Cir.), *cert. denied*, 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984) (finding that restitution is not tantamount to a civil judgment). The legislative history of the Act specifically states that § 3579(b)(5), recodified as § 3663(h)(2), greatly increases the victim's chances of collecting restitution because either the victim or the United States can enforce the restitution order with the remedies contained in F.R.Civ.P. 64 to collect the restitution. 1982 U.S.C.C.A.N. at 2539. Congress intended that the Act assist victims in collecting the restitution. 1982 U.S.C.C.A.N. at 2539; *See also* 1987 U.S.C.C.A.N. 2137, 2147 (stating that 18 U.S.C. 3663(f)(4) is intended to aid in collecting restitution payments); *Franklin*, 792 F.2d at 999 (finding that Congress intended the Act "to strengthen existing legal protections for victims and witnesses of Federal crimes." (quoting 1982 U.S.C.C.A.N. at 2515)). Contrary to Bank's contentions, the Act makes civil remedies available to collect restitution; it does not make restitution a civil judgment, which the district court cannot revoke.

Additionally, the Supreme Court has stated that though restitution resembles a judgment "for the benefit of" a victim, it is penal, rather than compensatory. *Kelly v. Robinson*, 479 U.S. 36, 52–53, 107 S.Ct. 353, 362–63, 93 L.Ed.2d 216, 230–31 (1986). Thus, although restitution and a civil judgment are enforceable similarly, restitution is not a civil judgment.

Moreover, in *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), a state court ordered the defendant to pay restitution as a condition of probation. The defendant made significant attempts to borrow the money to pay, but the defendant could not pay because of unemployment and other circumstances. The Supreme Court held that the Fourteenth Amendment precludes a state court from automatically revoking probation and re-sentencing the defendant without finding that the defendant did not make a bona fide effort to pay, or that other forms of punishment, other than imprisonment, would not suffice. *Bearden*, 461 U.S. at 672–73, 103 S.Ct. at 2073–74, 76 L.Ed.2d at 233. The Court also held that if a defendant "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority." *Bearden*, 461 U.S. at 672, 103 S.Ct. at 2073, 76 L.Ed.2d at 233.

In *Satterfield*, this court acknowledged that under *Bearden*, which did not address the Act, courts must consider alternative forms of punishment before revoking pro-

bation because of the defendant's failure to pay restitution. *Satterfield*, 743 F.2d at 843. The *Satterfield* court concluded that under the Act, courts may consider alternative forms of punishment before revoking probation because of the defendant's failure to pay restitution, despite good-faith efforts to pay. *Satterfield*, 743 F.2d at 843.

In this case, the district court found that Johnson failed to make a bona fide effort to pay restitution and that no other form of punishment, other than imprisonment, would suffice. Thus, the district court properly revoked the restitution order and resentenced Johnson on Count XXX within the applicable range. *See* 18 U.S.C. § 3663(g).

## CONCLUSION

We find that the legislative history and the Act's plain language do not indicate that Congress, either explicitly or implicitly, intended to provide a private cause of action to victims. Consequently, Bank has no standing under either Article III of the United States Constitution or the Victim and Witness Protection Act to challenge the district court's revocation of its restitution order. Because Bank has no standing to contest the district court's revocation of the restitution order, this appeal is dismissed.

DISMISSED.