**UNITED STATES of America, Plaintiff,**

and

Sandra Atkins; James Atkins; Bjorn Brodahl; Wendy Brodahl; William Chicoine; Kari Chicoine; Robert Fogel; Betty Fogel; James Gamble; Tom Henslin; Audrea Henslin; Roy Marshall; Jonathan Palmer; Michael Park; Fidel Sanchez; Patricia Sanchez; Carson Shade; Tim Stoddard; Paul Winslow; Anna Winslow; Larry Youngquist; William Zaputil; Juanita Zaputil, Appellants,

v.

**David M. MINDEL, Defendant–Appellee.**

No. 94–50562.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 20, 1995.

Decided April 5, 1996.

Miriam A. Krinsky and Steven G. Madison, Assistant United States Attorneys, Los Angeles, California, for plaintiff.

Vin A. Fichter, Encino, California, for appellants.

Christopher Rolin, Rodi, Pollock, Pettker & Galbraith, Los Angeles, California, for defendant-appellee.

Before: HUG, Chief Judge, LEAVY, Circuit Judge, and JONES,* District Judge.

HUG, Chief Judge:

In this case, we must decide whether a crime victim has standing to challenge a district court's order rescinding criminal restitution payments being made under the Victim & Witness Protection Act, 18 U.S.C. § 3663

---

* The Honorable Robert E. Jones, United States District Judge for the District of Oregon, sitting by designation.

et seq. ("VWPA"). Because we hold that a crime victim lacks standing to appeal the district court's order or to petition this court for mandamus review, we do not address the merits of this case. We, therefore, dismiss.

## I. Statement of Facts

In 1988, defendant David Mindel was charged in a fifteen-count indictment for mail fraud and conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 371 and 1341, arising from Mindel's marketing of precious metals. Mindel entered *nolo contendre* pleas to all fifteen counts.

At the same time, a group of victims, represented by attorney Vin Fichter ("Fichter Group"), had brought two civil actions [1] against Mindel relating to these same activities. On December 3, 1990, Mindel entered into a written settlement agreement with the Fichter Group, in which Mindel agreed to pay $780,000 to dispose of these claims. The settlement provided for an immediate payment of $535,000 from Mindel to the Fichter Group with the remaining $245,000 to be paid in twenty quarterly installments of $12,250. To protect against Mindel's default on the agreement, the settlement also provided for a portion of stock and property to be held as security.

On December 21, 1990, the district court sentenced Mindel to fifteen months imprisonment on Count One, and suspended sentencing on Counts Two through Fifteen, instead placing Mindel on five years probation. The district court also required Mindel to make the following restitution payments pursuant to the VWPA: the sum of $780,000 to the Fichter Group, and a total of $60,000 to four other victims not represented by Fichter. On May 2, 1991, the district court filed an amended judgment expressly incorporating the written settlement agreement into the criminal restitution order.

Mindel failed to meet his restitution obligations, and the Fichter Group foreclosed on the security. On May 27, 1993, Mindel filed a motion to modify the restitution order. He asserted that by exhausting the security, the

Fichter Group had elected their remedy under the settlement. In hearings following this motion, the district court found that Mindel had already paid $535,000 to the Fichter Group, that Mindel's ability to pay had substantially decreased since the time of the original order, and that Mindel's inability to pay was partly the result of attorney Fichter's overreaching.

In September 1994, the district court entered an order modifying the original restitution order by rescinding Mindel's obligation to make any further payments to the Fichter Group. The Fichter Group appeals the district court's order and asks that we either reverse or issue a writ of mandamus ordering that the restitution payments resume.

## II. Standing

The Fichter Group argues that they have standing to challenge the district court's order. The Government argues that the Fichter Group, as the beneficiary of the criminal restitution order made pursuant to the VWPA, does not have standing to pursue this appeal. We agree with the latter.

▪ Standing involves both constitutional requirements and prudential limitations. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60, 112 S.Ct. 2130, 2135–36, 119 L.Ed.2d 351 (1992). The constitutional requirements are derived from Article III, Section 2, Clause 1 of the United States Constitution, and the prudential limitations are rules of judicial self-governance. *Id.*

### A. Constitutional Requirements

▪ To meet " 'the irreducible constitutional minimum of standing,' " *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136, the Fichter Group must show three things:

First, the [Fichter Group] must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must be likely, as

---

**1.** *John Davies, et al. v. International Gem & Inv. Co.*, CV No. 86–8058–FW; *Ron Brewer, et al. v.* *International Gem & Inv. Co.*, CV No. 89–5047–FW.

opposed to merely speculative, that the injury will be redressed by a favorable decision.

*United States v. Hays,* 515 U.S. ——, ——, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635, 642 (1995) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)).

In the present case, the "irreducible minimum" standing inquiry turns on whether the Fichter Group has suffered "injury in fact." The issue of whether beneficiaries of criminal restitution orders have suffered "injury in fact" because of the rescission of such orders is a question of first impression for this circuit.

The Eleventh Circuit, however, has considered this issue and has held that crime victims do not have standing to appeal a district court's rescission of a criminal restitution order. *See United States v. Johnson,* 983 F.2d 216, 217 (11th Cir.1993). Distinguishing the divergent interests of victims from those of the Government-the former's being compensatory, while the latter's penal-the Eleventh Circuit determined that a restitution order serves a penal rather than a compensatory purpose. *Id.* at 220. Thus, the victims had not suffered "injury in fact," and therefore did not have standing to appeal the district court's rescission order.[2] *Id.* at 219–20.

■ The Fichter Group attempts to distinguish *Johnson.* The group asserts that because the district court incorporated the civil settlement agreement into the criminal restitution order, the order afforded standing to the Fichter Group. We are unpersuaded. We have previously recognized that the policy of criminal restitution is penal and not compensatory. *United States v. Cloud,* 872 F.2d 846, 854 (9th Cir.), *cert. denied,* 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989). We agree with the decision of the Eleventh Circuit in *Johnson* and hold that the Fichter Group has not suffered "injury in fact."

*Johnson,* 983 F.2d at 219–20. And while the Fichter Group still retains the right to seek enforcement of the settlement against Mindel in a civil proceeding, this does not provide them with standing in this criminal action. *See Hays,* —— U.S. at —— – ——, 115 S.Ct. at 2434–35, 132 L.Ed.2d at 642. Thus, the Fichter Group has not met the "irreducible minimum" standing requirement.

### B. *Prudential Limitations*

■ The Fichter Group also argues that it has standing under the VWPA to challenge the recision of the restitution order. In making this argument, the Fichter Group contends that the VWPA contemplates that "the right to restitution order, once awarded ... gave [the Fichter Group] the right to enforce that judgment as though it were a civil judgment."

■ In order to establish standing under a statute, a party must meet judicially-created prudential limitations, including the requirement that the interest sought to be vindicated falls "within the zone of interests protected by the law invoked." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). "Under the zone-of-interests test a litigant lacks 'a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Grundhoefer,* 916 F.2d at 792 (quoting *Clarke v. Securities Indus. Ass'n,* 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987)). The relevant inquiry, therefore, is whether the Fichter Group's interests fall within the zone of interests created by the VWPA.

■ Congress made clear the extent and purposes of the VWPA. Nowhere in the statute does Congress suggest that the VWPA was intended to provide victims with a private remedy to sue or appeal restitution decisions, and nothing in the statute's legisla-

---

**2.** *See also United States v. Grundhoefer,* 916 F.2d 788, 791 (2nd Cir.1990) (stating that bankruptcy trustee did not suffer "injury in fact" where district court ordered restitution to be paid from bankruptcy estate because "[t]he direct, distinct and palpable injury in a criminal proceeding plainly falls only on the defendant who is being sentenced"); *United States v. Kelley,* 997 F.2d 806, 807–08 (10th Cir.1993) (putative victim whose intervention motion and request for restitution in district court were denied lacked standing to appeal).

tive history supports such a reading, either. *See* H.Rep. No. 681(I), 101st Cong., 2d Sess. 177 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6583; H.Rep. No. 390, 100th Cong., 1st Sess. 11 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2137, 2147; H.Rep. No. 1030, 98th Cong., 2d Sess. 86 (1984), *reprinted in* 1982 U.S.C.C.A.N. 2515, 2537. Instead, Congress's purpose in enacting the VWPA was to assist victims in collecting the restitution orders entered by the court. 1982 U.S.C.C.A.N. at 2539; *see also* 1987 U.S.C.C.A.N. 2137, 2147. Even though the VWPA allows victims to enforce restitution orders as if they were civil judgments, the VWPA did not transform restitution orders into civil judgments. *See* 18 U.S.C. § 3663(h); *Johnson,* 983 F.2d 216, 220 (stating that "the [VWPA] makes civil remedies available to collect restitution; it does not make restitution a civil judgment, which the district court cannot revoke"). We conclude that the VWPA does not contemplate giving private parties the right to appeal restitution orders or any modification to restitution orders. Consequently, the Fichter Group does not have standing under the VWPA to challenge the district court's order rescinding restitution payments.

### III. *Writ of Mandamus*

■ The Fichter Group argues that even if it does not have standing to bring a direct appeal of the district court's order, it nevertheless has standing to petition this court for a writ of mandamus. In support of this position, the Fichter Group relies on *United States v. Schlette,* 842 F.2d 1574, 1576 (9th Cir.), *amended,* 854 F.2d 359 (1988). Because *Schlette* is inapposite to the present situation, we reject the Fichter Group's argument and refuse to grant mandamus review.

Although we have previously granted parties standing to petition this court for mandamus review where these parties did not have standing to appeal, this has been limited to instances involving the alleged violation of First Amendment rights. *Id.; United States v. Brooklier,* 685 F.2d 1162, 1165–66 (9th Cir.1982) (allowing mandamus review for newspaper even where newspaper did not have standing to appeal); *Sacramento Bee v.*

*United States Dist. Court,* 656 F.2d 477, 480–81 (9th Cir.1981), (same) *cert. denied,* 456 U.S. 983, 102 S.Ct. 2257, 72 L.Ed.2d 861 (1982); *United States v. Sherman,* 581 F.2d 1358, 1360 (9th Cir.1978) (same).

In each of the aforementioned cases, the party seeking mandamus review had been denied access to documents at the district court level, and these denials had interfered with each of these parties' First Amendment access rights. In the present case, no such First Amendment rights are at issue, and we decline to extend the holding of *Schlette* beyond the First Amendment context. Accordingly, we hold that the Fichter Group does not have standing to petition this court for a writ of mandamus.

**DISMISSED.**