**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 22 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff,

      v.

FRANK SCHAD,

    Defendant-Appellee.

_____

ALLIED BEARINGS SUPPLY, INC.,

    Movant-Appellant.

No. 97-5003
(D.C. No. 88-CR-2-B)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY**, **BRISCOE**, and **MURPHY**, Circuit Judges.

---

    Allied Bearings Supply, Inc., appeals the district court's order terminating its right

to continue garnishing the wages of Frank Schad pursuant to a criminal restitution order.

We conclude Allied lacks standing and dismiss the appeal.

---

    [*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

I.

Schad pleaded guilty to three counts of mail fraud and was sentenced to a term of four years' imprisonment, followed by four years' probation. In addition, relying on the provisions of the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663 *et seq.*, the district court ordered restitution to the victim (Allied) in the amount of $1,000,000, "to be paid at a rate to be determined by the U.S. Probation Office." Appendix, Doc. 1 at 1. "The first payment [of restitution was] to come from the defendant's forfeiture of his profit share account at Allied . . . in the amount of $121,696." Id. Schad did not appeal his sentence.

Schad allegedly made monthly restitution payments as required by the probation office. The record does not indicate when the payments began or how much Schad has paid. After Schad was released from confinement, Allied sought and received, in the context of the criminal proceedings, an order for garnishment of Schad's wages. The garnishment began in late 1994 and continued throughout 1995 and 1996 until the court terminated Allied's right to garnishment in December 1996. The garnished amount was in addition to the monthly payments Schad continued to remit to the probation office. Schad moved to terminate Allied's right to garnishment on November 8, 1996, because his period of probation had expired. The district court granted Schad's motion over Allied's objection. The court cited 18 U.S.C. § 3663(f) (since rescinded and replaced by other provisions), concluding the restitution order expired at the end of Schad's probation

period and Allied could not rely on that order as a basis for continuing to garnish Schad's wages.

## II.

Our threshold question is whether Allied had standing to participate as a party in the criminal proceeding to obtain a garnishment order. Although neither party has addressed this precise issue on appeal, it is our duty to address the issue *sua sponte* "because it involves a constitutional limitation on a federal court's jurisdiction," Skrzypczak v. Kauger, 92 F.3d 1050, 1052 (10th Cir. 1996), cert. denied 117 S. Ct. 957 (1997), and "'federal courts are under an independent obligation to examine their own jurisdiction.'" Id. (quoting FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990)).

The question of standing involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. Bennett v. Spear, 117 S. Ct. 1154, 1161 (1997). In United States v. McVeigh, 106 F.3d 325 (10th Cir. 1997), we recently outlined the three fundamental requirements imposed by Article III for standing in federal courts:

> First, the [complainant] must have suffered an injury in fact--an invasion of a legally protected interest which is concrete and particularized and actual or imminent. Second, a causal connection must exist between the injury and the conduct complained of; the injury must be fairly traceable to the challenged action. Third, it must be likely that the injury will be redressed by a favorable decision.

Id. at 334.

Here, the question of Allied's standing turns on the "injury in fact" requirement.

Entry of a restitution order does not afford a crime victim standing to participate in the criminal proceeding because "a restitution order serves a penal rather than a compensatory purpose." United States v. Mindel, 80 F.3d 394, 397 (9th Cir. 1996); see United States v. Kelley, 997 F.2d 806, 807-08 (10th Cir. 1993) (concluding victim lacked standing to appeal restitution order); United States v. Johnson, 983 F.2d 216, 219 (11th Cir. 1993) (concluding crime victim, "as a collateral entity to the [criminal] proceedings, ha[d] not suffered a direct injury adequate to satisfy the Article III constitutional requirements"). Stated differently, "[t]he direct, distinct and palpable injury in a criminal sentencing proceeding plainly falls only on the defendant who is being sentenced. It is the defendant and he alone that suffers the direct consequences of a criminal . . . sentence." United States v. Grundhoefer, 916 F.2d 788, 791 (2d Cir. 1990).

Although Allied has not suffered an "injury in fact," we acknowledge its interest in enforcing the restitution order falls within "the zone of interests" protected by the VWPA. Allen v. Wright, 468 U.S. 737, 751 (1984). The plain language of the VWPA, in particular § 3663(h), clearly suggests Congress intended that victims be able to enforce restitution orders entered in their favor. See Mindel, 80 F.3d at 398 ("Congress's purpose in enacting the VWPA was to assist victims in collecting the restitution orders entered by the court."). Thus, in seeking to enforce the restitution order via garnishment, Allied's interests were consistent with the purpose of the VWPA itself.

However, nothing in the VWPA gives a crime victim the right to enforce a

restitution order in the context of criminal proceedings. Rather, the VWPA indicates "[a]n order of restitution may be enforced . . . by the victim named in the order to receive the restitution in the same manner as a judgment in a civil action." 18 U.S.C. § 3663(h).[1] Thus, in this case, the proper method to obtain garnishment of Schad's wages would have been through a separate civil action filed in Oklahoma state court.[2] See Okla. Stat. Ann. tit. 12, §§ 1182-1196.

As we conclude Allied lacked standing to obtain a garnishment order in the context of the criminal proceedings, Allied continues to lack standing to appeal the district court's order terminating garnishment.

III.

---

[1] In 1996, § 3663(h) was rescinded and replaced with new enforcement provisions. See, e.g., 18 U.S.C. § 3664(m)(1)(B).

[2] Although this option is no longer open to Allied in light of the district court's conclusion concerning expiration of the restitution order, Allied can still seek full restitution by filing a civil suit against Schad. The VWPA makes this task somewhat easier by providing that "conviction of a defendant for an offense involving the act giving rise to restitution . . . shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding or State civil proceeding, to the extent consistent with State law, brought by the victim." 18 U.S.C. § 3663(e) (pre-amendment version).

The appeal is DISMISSED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge