[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12993
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cr-20763-CMA-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

EARL BALDWIN,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 12, 2021)

Before NEWSOM, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

Earl Baldwin appeals the revocation of his term of supervised release after the district court found that he violated a condition of that supervised release. Baldwin argues that the district court, in making that finding, erroneously shifted the burden of proof and did not fully consider his good-faith compliance efforts. We conclude that these claims lack merit and therefore affirm the district court.

## I.    FACTUAL AND PROCEDURAL HISTORY

A jury convicted Earl Baldwin for conspiracy to defraud the United States government with respect to claims, in violation of 18 U.S.C. § 286; conspiracy to use unauthorized access devices, in violation of 18 U.S.C. § 1029(b)(2); unauthorized use of access devices, in violation of 18 U.S.C. § 1029(a)(2); and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). As a result, the district court imposed a sentence of 84-months' imprisonment to be followed by a three-year-term of supervised release. This Court affirmed his convictions and sentence in a prior appeal. *See United States v. Baldwin*, 774 F.3d 711, 735 (11th Cir. 2014).

On May 14, 2019, Baldwin began his term of supervised release. Among the conditions that the district court imposed for the supervised release was that Baldwin "shall maintain full-time, legitimate employment and not be unemployed for a term of more than 30 days unless excused for schooling, training or other acceptable reasons." On June 15, 2020, Baldwin's probation officer, Kip Jackson, petitioned

2

the district court to revoke Baldwin's term of supervised release on the basis that Baldwin had failed to maintain full-time employment and had remained unemployed for more than thirty days. On July 30, 2020, the district court held a revocation hearing. The following factual recitation derives from Jackson's testimony at the hearing.

Shortly after Baldwin's release from prison, Jackson met Baldwin at Baldwin's home. At their initial meeting, Jackson reminded Baldwin that maintaining employment was a condition of Baldwin's supervised release. Their second in-home visit was in July 2019. At that time, Baldwin told Jackson that he was attempting to re-establish social security benefits and that the Social Security Administration would mail its determination as to Baldwin's eligibility within thirty to ninety days. Jackson told Baldwin that "it would be best for him to seek employment." Baldwin did not show Jackson any proof of employment for the period from May 2019 to July 2019. On December 5, 2019, Jackson again went to Baldwin's home to visit him. During the visit, Jackson asked Baldwin about the employment search, to which Baldwin replied that he had filed a number of job applications to no avail. At that time, Jackson advised Baldwin to seek job assistance with the OIC of South Florida for job assistance.

Beginning in March 2020, Jackson had follow-up conversations over the phone to check on Baldwin. During one of those conversations, Baldwin said that

he applied for a position with Goodwill but that Goodwill decided to go with other candidates. Jackson noted that Baldwin did not meet the minimum qualifications for that position because Baldwin did not have a high school diploma or a GED. Jackson re-advised Baldwin to seek the help of two career assistance programs: OIC and Transition. The day before the revocation hearing, Baldwin told Jackson that he called both OIC and Transition, but Jackson was not aware of any other attempt that Baldwin made to speak with those agencies.

Baldwin's defense attorney then cross-examined Jackson. On cross-examination, Jackson testified that he did not ask Baldwin to document employment applications until March 2020, but Baldwin complied once Jackson made the request.[1] Jackson referred Baldwin to a program through Goodwill that teaches people how to sew, but Baldwin was not eligible because he did not meet one of the criteria: being deemed disabled by the Social Security Administration Office. Jackson again testified that Baldwin started to provide documentation after Jackson asked. Jackson added that the document shows Baldwin used an online application program to apply to jobs with "BJ's, with Lowe's, with Goodwill, with UPS, with warehouse companies and so forth."

---

[1] We note that, at different times during the revocation hearing, Jackson testified that he first asked Baldwin to begin documenting his job search efforts in either December 2019 or March 2020.

On redirect, Jackson clarified that Baldwin only provided the documentation about employment applications a couple of days prior to the July 2020 hearing and did not previously provide documentation even after the request in March 2020. Other than applying to Goodwill, the recent efforts with OIC and Transitions, and the recent documentation of applications, Jackson did not know whether Baldwin undertook any additional efforts to find a job.

On cross-examination, however, Jackson testified that Baldwin never said that he only wanted to collect disability benefits and not work. Jackson also testified that while other defendants he supervised were able to find employment through programs like OIC and Transitions, those other defendants, unlike Baldwin, had at least a high school diploma or GED.

The district court then questioned Jackson about the timeline surrounding his Baldwin's efforts to find a job. Jackson testified that Baldwin did not indicate that he made any efforts, between the pair's initial meeting in May 2019 and their second meeting in July 2019, to obtain a full-time job. As to the period between July 2019 to December 2019, Baldwin told Jackson that he applied for several jobs, but Baldwin did not provide documentation or specify how many applications he filed.

On re-cross, defense counsel elicited testimony from Jackson to clarify the testimony from the district court's examination. Specifically, Jackson clarified that he could not recall whether he explicitly asked whether Baldwin sought employment

5

between May and July 2019. Jackson further testified that he did not make a contemporaneous note in his report that Baldwin was not trying to find a job during that period. Jackson also testified that after he requested that Baldwin begin providing proof of his efforts, Baldwin complied.

After Jackson's testimony, the prosecutor argued that, based on the testimony, it was "clear that that violation has occurred," although "there [was] a separate question of the efforts that were made," which could be dealt with separately. Defense counsel, by contrast, emphasized Baldwin's compliance with most of the terms of supervised release, noting that "the probation officer[] indicated in court that Mr. Baldwin never said, 'look, I'm applying for disability, so I don't want to find a job,'" and that "[f]rom May of 2019, when there was the first meeting between the probation officer and Mr. Baldwin, Mr. Baldwin had indicated that he would make efforts to find employment." Defense counsel further noted that "[w]hen the probation officer first asked him to begin providing him with documentation, Mr. Baldwin began taking screenshots of the applications that he was submitting."

Baldwin also addressed the district court. Specifically, he stated:

[U]nfortunately, because I don't have a GED or high school diploma, I have been turned away by almost everybody that I applied to. So it is not that I'm not searching or looking, and I -- it wasn't like I just started since the screenshots, but I just was never asked to actually record the screenshots of my earlier applications.

6

The district court then reviewed the evidence and made the following factual findings about the alleged violation:

> It is clear to me that, at least in the calendar year of 2019, Mr. Baldwin, you made minimal efforts, if any, to try to obtain employment. First, your probation officer indicated that you didn't indicate to him that you had made any efforts to obtain employment during that six-plus-month time period in 2019. Upon questioning by your attorney, the probation officer has sort of qualified those earlier responses by saying that, yes, you told him, you told the probation officer you were trying to find a job, but we don't know where you applied, when you applied, how frequently you applied. We don't know anything. And from not knowing anything, I reached the conclusion that you did not make efforts to find employment in the calendar year of 2019. . . . You could do lawn maintenance work. You could do custodial work. I don't think you need a high school diploma to engage in those activities.

As a result, the district court found that Baldwin "violated the requirements of [his] supervised release by not making sufficient, if any, effort to seek to comply with that requirement of supervision that [he] maintain employment." After hearing sentencing recommendations from both sides, the district court revoked Baldwin's term of supervised release and imposed a new 35-months term of supervised release. As part of the new term of supervised release, the district court required Baldwin to keep a daily log of his efforts to obtain employment and turn that log into his probation officer on a weekly basis. On July 30, 2020, the district court entered judgment. This timely appeal followed.

## II.   STANDARD OF REVIEW

We review the revocation of supervised release for an abuse of discretion, *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010), and we will not overturn a district court's factual findings unless they are clearly erroneous, *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993).   We review *de novo* legal questions, which includes whether the burden of proof was improperly placed on the defendant.   *See United States v. Anton*, 546 F.3d 1355, 1358 (11th Cir. 2008).

A district court abuses its discretion when it "commits a clear error of judgment," "applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *United States v. Harris*, 989 F.3d 908, 911–12 (11th Cir. 2021) (quoting *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019)).   For a factual finding to be clearly erroneous, the finding must leave us with "a definite and firm conviction that a mistake has been committed."   *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012) (quoting *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010)).   If the evidence allows for two reasonable views, then a district court's choice between the two cannot be clearly erroneous.   *Id.*   Thus, a district court's credibility determination must be accepted unless it "is so inconsistent or improbable on its face that no reasonable factfinder could accept it."   *United States v.*

8

*Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2003) (quoting *United States v. Eddy,* 8 F.3d 577, 580 (7th Cir. 1993)).

## III.    ANALYSIS

On appeal, Baldwin argues that the district court erred in: (1) finding that he violated the terms of supervised release without sufficient evidence; and (2) improperly shifting the government's burden by requiring Baldwin to show that he did not willingly fail to maintain employment.  We find both arguments without merit and address each in turn.

### A.    Violation of Supervised Release

The district court may revoke a term of supervised release if it finds, by a preponderance of the evidence, that the defendant violated a condition of his supervised release.  18 U.S.C. 3583(e)(3); U.S.S.G. § 7B1.3(a)(2); *see also United States v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004) (explaining that preponderance of the evidence means that the existence of a fact is more probable than not).  Here, the district court did not abuse its discretion in finding by a preponderance of the evidence that Baldwin violated the terms of his supervised release.  Jackson testified about Baldwin's statements, which included that Baldwin was not successful in his efforts to find a job.  Thus, as the prosecutor noted at the revocation hearing, there is little doubt that Baldwin failed to meet the related

requirements of maintaining employment and not being unemployed for more than thirty days.

Baldwin, however, argues that this does not end the inquiry. He points to the United States Supreme Court's decision in *Bearden v. Georgia*, 461 U.S. 660 (1983), to contend that the district court should not have revoked his supervised release without considering whether he made bona fide efforts to find a job. In *Bearden*, a state trial court revoked a defendant's probation because he could not pay a fine and restitution as scheduled because he lost his job. *Id.* at 662–63. The defendant challenged the decision as violating the Equal Protection Clause of the Fourteenth Amendment. *Id*. The Supreme Court concluded that the state trial court erred in "automatically revoking probation because petitioner could not pay his fine, without determining that petitioner had not made sufficient bona fide efforts to pay or that adequate alternative forms of punishment did not exist." *Id*. at 662. However, the Supreme Court explained that revocation is justified where a "probationer has willfully refused to pay the fine or restitution when he has the means to pay . . . as a sanction to enforce collection." *Id*. at 668.

We have subsequently stated that in the federal context, "courts must consider alternative forms of punishment before revoking probation because of the defendant's failure to pay restitution." *United States v. Johnson*, 983 F.2d 216, 220–21 (11th Cir. 1993). And, more broadly, we have said that even outside of the

context of financial sanctions, a district court should also consider whether the defendant made a good faith effort to comply with the conditions of supervised release prior to revoking the term of supervised release. *United States v. Holland*, 874 F.2d 1470, 1473 (11th Cir. 1989). "However, the ultimate decision to revoke . . . is entrusted to the sound discretion of the district court and should be disturbed only upon a finding of abuse of that discretion." *Id*.

Baldwin argues that "the government presented no evidence to demonstrate that [he] did not make a good faith effort to find employment." However, an examination of the record reveals that the district court considered Baldwin's alleged efforts to find employment in 2019 and found them "minimal." The district court made that finding after Jackson's testimony that: (1) Baldwin told Jackson that he was applying for disability benefits in response to a question about how Baldwin's job search was coming along; (2) Baldwin's lack of specificity when Jackson asked about the job search; and (3) others Jackson supervised that were more successful in finding jobs.

Here, the circumstantial evidence that Baldwin did not make good faith efforts to find a job was sufficient such that the district court did not clearly err in its factual findings. We therefore reject this argument.

11

**B.     Burden of Proof**

Baldwin also contends that the district court erroneously shifted the burden of proof such that he had to demonstrate his good faith efforts rather than requiring the government to show that Baldwin lacked good faith in his job search. Specifically, Baldwin contends that the district court's revocation was due to Baldwin's failure to provide sufficient evidence concerning his efforts to find a job. We disagree with this characterization of the record.

As an initial matter, while this Court has not specifically opined on whether the government has the burden of proof in a supervised release context, we have stated that the government has the burden of proof in a probation violation revocation hearing, which is the functional equivalent. *See id.* at 1472 (explaining the that the government has the burden of proof in a probation hearing); *United States v. Frazier*, 26 F.3d 110, 113 (11th Cir. 1994) ("[C]ourts treat revocations the same whether they involve probation, parole, or supervised release.").

The crux of Baldwin's argument at the revocation hearing was that he never explicitly told Jackson that he refused to look for a job and that he in fact told Jackson he filed some number of applications, which shows a good faith effort to comply with the terms of his supervised release. The job search was made all the more difficult, Baldwin argues, because he lacks a high school education and has a history of mental illness and disability. We find that the district court was free to reject

12

these arguments in light of the contrary evidence.  Specifically, the relevant condition of supervised release provides that "the defendant shall provide documentation including, but not limited to pay stubs, contractual agreements, W-2 Wage and Earnings Statements, and other documentation requested by the U.S. Probation Officer."  Though Jackson's request that Baldwin document his employment applications did not come until December 2019, the district court did not clearly err in finding that it strains credulity that Baldwin, over the course of several months, filed a sufficient number of job applications to constitute a good faith effort yet was not able to provide Jackson with corroborating evidence during their meetings at Baldwin's home.  Accordingly, we reject this argument.

## IV.    CONCLUSION

We conclude that the district court did not erroneously shift the burden of proof to Baldwin, that the district court's factual finding that Baldwin did not make a good faith effort to comply with the requirement to maintain a job was not clearly erroneous, and that the district court did not abuse its discretion in revoking Baldwin's supervised release.  Therefore, we affirm the judgment of revocation.

**AFFIRMED.**