UNITED STATES of America, Plaintiff,

v.

Arthur GRUNDHOEFER, Leonard Hausman, et al., Defendants,

Richard E. O'Connell, as Trustee in Bankruptcy for Hausman Computer Associates, Inc., an Intervening Party, Plaintiff.

Richard E. O'CONNELL,
Claimant–Appellant,

v.

BROOKLYN LEGAL SERVICES CORPORATION, Appellee.

Nos. 742, 743, Dockets 89–1435, 89–1472.

United States Court of Appeals,
Second Circuit.

Argued Feb. 14, 1990.

Decided Oct. 3, 1990.

Michael S. Devorkin, New York City (Doar Devorkin & Rieck, New York City, of counsel), for claimant appellant Richard E. O'Connell as trustee in bankruptcy for Hausman Computer Associates, Inc., debtor.

Elizabeth M. Imholz, Brooklyn, N.Y. (John C. Gray, Jr., Brooklyn Legal Services Corp. B, Brooklyn, N.Y.; Scott Thompson, Stewart Klein, Davis Polk & Wardwell, New York City, of counsel), for appellee, Brooklyn Legal Services Corp. B.

Before CARDAMONE, WINTER and ALTIMARI, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal brings before us restitution orders that direct the principals of Hausman Computer Associates, Inc. (Hausman School or the School) to pay specified amounts into a fund for the benefit of the School's former students. The restitution orders were made part of the sentences imposed on the School's two founders. They and other school employees were convicted of defrauding the government and students, many of whom had paid over to the School their guaranteed student loan checks and were relying on the School to provide the training necessary to find employment to repay their loans. The School's abrupt closing and bankruptcy in 1987 left these unsuspecting students without recourse. Defaulting on a student loan has, of course, serious and negative consequences to a student's credit rating and future loan possibilities.

Recognizing these detriments, the New York State Education Department set up its own fund to reimburse students for tuition payments made to unscrupulous trade schools—assisting many students in repaying student loans incurred to pay their tuition bills. *See* N.Y. Times, July 10, 1990, at B1, col. 5, B4, cols. 3 & 4. In this case, not only were the government and students defrauded, but a number of other creditors filing claims in the corporation's bankruptcy proceeding also lost money. Appellant, Richard E. O'Connell, trustee in bankruptcy for the Hausman School, as debtor, intervened and unsuccessfully challenged the restitution orders in the district court sentencing proceedings.

The trustee appeals from that part of the final judgment and order of restitution entered August 11, 1989 in the United States District Court for the Southern District of New York (Sweet, J.), directing Arthur J. Grundhoefer to make restitution—in an amount agreed upon by the government and the defendant—to the student victims of the conspiracy. More particularly, the intervening appellant appeals from the denial of restitution to him as trustee for the debtor and the award of restitution to Brooklyn Legal Services, in trust for the student victims. The trustee also appeals from a similar order of restitution entered on September 15, 1989 in the Southern District (Leval, J.) that directed defendant Leonard Hausman to make restitution in the sum of over $1 million to Brooklyn Legal Services acting on behalf of the student claimants of the same Hausman School corporation.

## FACTS

This case stems from the criminal conspiracy of defendants Grundhoefer and Hausman, who founded a computer training school incorporated under the name Hausman Computer Associates, Inc. in 1980 and during its existence were its sole shareholders, officers, and directors. The Hausman School sought students who were eligible for federal financial assistance under 20 U.S.C. § 1070 *et seq.* (1988), in the form of Basic Educational Opportunity Grants, commonly known as "Pell Grants," and guaranteed student loans. Because the School's application to the New York State Education Department certified that all its students had previously acquired a high school diploma or its equivalent, the School's students who had not graduated from high school were ineligible for federal assistance. In 1983 Grundhoefer and Hausman learned that some of the School's students were not high school graduates. In order to maintain the steady stream of federal money to which they had become accustomed, Grundhoefer and Hausman together with two recruiters they employed—Maria Faughaner and Rita Toro—conspired to make fictitious high school diplomas or equivalency diplomas and records for those students who had not graduated from high school.

From 1984 through 1987 the Hausman School received $25 million in federal grant money and guaranteed student loans, and from these substantial funds it paid Hausman and Grundhoefer during the two and a half years from 1985 through mid–1987 total salaries of $1,500,000 and $1,462,000 respectively. After the Federal Bureau of Investigation raided the School's premises in September 1987 and uncovered the falsi-

fied diploma scheme, it was closed. Subsequently, Hausman Computer Associates, Inc. filed for bankruptcy under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York (Buschman, B.J.). When appellant O'Connell was appointed trustee his task was to ascertain and recover the School's assets and provide for their proper distribution among its creditors.

## A. Criminal Proceedings

Following the government's criminal investigation of the School's activities in 1987 and Hausman's subsequent arrest, he pled guilty on February 24, 1989 to one count of conspiracy under 18 U.S.C. § 371 (1988), for conspiring to make false claims to the Department of Education and to obtain federal monies by fraud. He also pled guilty to one count of a substantive violation of 18 U.S.C. § 666 (1988)—obtaining federal grants by fraud. On May 31, 1989 Grundhoefer pled guilty to the first two counts of a 31–count indictment filed against him and Rita Toro, also under §§ 371 and 666. Toro went to trial and was convicted of participating in the conspiracy and of 29 substantive counts under 18 U.S.C. §§ 287 and 2 for falsifying high school diplomas. Her conviction was affirmed by this Court in an unpublished opinion dated June 11, 1990. Maria Faughaner, the other Hausman School defendant, pled guilty to one count of conspiracy and one count of making false claims for federal grants.

## B. Restitution

Brooklyn Legal Services Corporation B and Bronx Legal Services (collectively Legal Services) jointly wrote Judge Sweet and Judge Leval in 1989 regarding the forthcoming sentencing of Faughaner and Hausman. Together they represented defrauded students of the Hausman School. Legal Services "urge[d the court] to require restitution and direct that the United States Department of Education set aside in a separate account for the benefit of former students all monies collected in connection with Hausman Computer School defendants." The letter suggested that such an arrangement would benefit those students enrolled at the school at the time of its closing who would be forced to repay their student loans and would also benefit the government.

On July 18 when Faughaner appeared before Judge Sweet for sentencing, Legal Services spoke in favor of an order requiring the $250,000 that Faughaner had agreed to pay in restitution be placed in a separate fund for the benefit of the student victims. The Assistant United States Attorney (AUSA) consented to this proposal, and Judge Sweet expressed his receptiveness to it as well, though he ultimately declined to sentence Faughaner until after consulting with Judge Leval who was shortly to sentence co-defendant Hausman.

Legal Services followed their appearance with a July 20th letter sent to both Judge Sweet and Judge Leval providing a more detailed explanation of their proposal. The letter stated that "two groups of student victims already have been identified: (1) those students who were enrolled in the school at the time of the closing and who had student loan liability; and (2) students to whom or on whose behalf the school owed but never paid student loan refunds." Legal Services attached a list—which it had obtained from the New York State Education Department—of the names and social security numbers of the students enrolled at the School at the time of its closing and the students to whom the School owed student loan refunds.

In a July 28, 1989 letter directed to Judges Sweet and Leval the trustee's attorney asked to be permitted to submit its case for a restitution order in favor of the debtor and that the letter be considered a request to intervene for that purpose. On August 2 Grundhoefer appeared for sentencing before Judge Sweet. The government, Legal Services and the trustee each advocated their respective positions on the proposed restitution order. The AUSA argued in favor of an order requiring that the $740,000 Grundhoefer agreed to pay in restitution be given to the student victims represented by Legal Services and not to the "bankruptcy trustee's pot to be used

for, presumably, the computer school's electric bills [and] water bills." The trustee advocated an order requiring restitution to be made in favor of the unsecured creditors—which he asserted were equally victims of the Hausman conspiracy—through a distribution supervised by the bankruptcy court. Legal Services reiterated its position in favor of restitution to the student victims, whose claims under the bankruptcy code it asserted were time-barred.

Judge Sweet entered a judgment that same day sentencing Grundhoefer to a prison term of a year and a day and directing "[c]ounsel for the Government and [Legal Services] to submit to the Court a proposed order providing a plan for disbursing the amount paid in restitution to the student victims of the conspiracy." At their respective sentencing hearings, Judge Sweet ordered that the restitution paid by co-defendants Faughaner and Toro be added to the restitution fund established as part of Grundhoefer's sentence.

On September 11 at Hausman's sentencing before Judge Leval Legal Services asked the court to enter an order similar to that entered by Judge Sweet. Judge Leval agreed. He sentenced Hausman to 14 months imprisonment and directed that restitution be made pursuant to a plan submitted by the government on consideration of the submissions of Brooklyn Legal Services as well as other student claimants with *bona fide* claims for restitution.

## DISCUSSION

It is from the restitution portion of the sentencing judgments of August 11 and September 15, 1989 that the trustee appeals. He urges that we reverse those portions of the judgments that directed restitution be made by defendants Grundhoefer and Hausman to former students of the Hausman School because the students were not "victims" entitled to restitution under the Victim and Witness Protection Act, 18 U.S.C. §§ 3663, 3664 (1988) (Act). In the alternative, appellant argues that even were the former students victims under the Act, restitution should not have been ordered to the exclusion of the unse-

cured creditors of the Hausman School who also suffered economic loss as a result of the crimes of Grundhoefer and Hausman. Appellant also challenges the procedure utilized in entering the orders under the Act and Fed.R.Crim.P. 32.

### I Standing

#### A. Constitutional Requirements

■ Whether a party has standing in the federal courts is always considered within the framework of Article III, Section 2, cl. 1, that extends federal judicial power to all "cases" and "controversies," and which first asks whether the challenged action has caused a plaintiff injury in fact. *See Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 151–52, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970); *Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968). Plaintiff must also show that the injury may fairly be traced to the challenged action of defendant, and that a favorable decision is likely to redress it, *see Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1976); *Linda R.S. v. Richard D.*, 410 U.S. 614, 618, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973). To establish standing a plaintiff must clearly set forth facts to satisfy Article III's requirements.

■ Standing it is admitted does not always lend itself to consistently logical analysis. But injury in fact stands on this subject like a deeply driven channel marker for all to see while the swirl and eddy of inconsistent currents round-about it. It is that criterion that the appellant trustee has failed to satisfy. The direct, distinct and palpable injury in a criminal sentencing proceeding plainly falls only on the defendant who is being sentenced. It is the defendant and he alone that suffers the direct consequences of a criminal conviction and sentence. Collateral individuals to the proceeding—like the present appellant bankruptcy trustee—have not suffered an Article III direct injury sufficient to invoke a federal court's jurisdiction to rule on their claim.

For this reason a private citizen generally lacks standing "to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R.S.*, 410 U.S. at 619, 93 S.Ct. at 1149; L. Tribe, *American Constitutional Law* § 3–16, at 124 (2d ed. 1988) ("[T]he interest in the just administration of the laws, including the interest in nondiscriminatory criminal enforcement, is presumptively deemed nonjusticiable even if invoked by persons with something beyond a generalized bystander's concern[.]"); *cf. Whitmore v. Arkansas*, —— U.S. ——, 110 S.Ct. 1717, 1724, 109 L.Ed.2d 135 (1990) (denying private citizen standing to bring challenge to another's death sentence under the Eighth Amendment). Hence, unless the trustee can establish that Congress gave him a right to restitution under the Act, *see Linda R.S.*, 410 U.S. at 617 & n. 3, 93 S.Ct. at 1148 & n. 3, the trustee has not shown injury in fact and cannot challenge a restitution order imposed as part of a defendant's sentence.

### B. Prudential Limitations

■ To establish standing under a statute, a plaintiff must meet judge-made prudential limitations. These prudential principles attempt to limit federal courts from becoming enmeshed in cases that do not vindicate individual rights protected by the statute. One prudential limitation is the requirement that the interest a plaintiff seeks to vindicate is "within the zone of interests" protected by the federal law invoked. *See Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Association of Data Processing Serv. Orgs.*, 397 U.S. at 153, 90 S.Ct. at 828. Under the zone-of-interests test a litigant lacks "a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987). Although most often applied to legislation governing administrative agencies, the test also relates to legislation where analysis reveals that the litigant is the kind of party Congress sought to benefit under the statute. *See* L. Tribe, *American Constitutional Law* § 3–20, at 144. We turn to an analysis of the statute.

The restitutionary provisions of the Victim and Witness Protection Act were passed to "permit[ ] the court ... to order payment of restitution independently of a sentence of probation." S.Rep. No. 97–532, 97th Cong., 2d Sess. 30, *reprinted in* 1982 U.S.Code Cong. & Admin.News 2515, 2536 (1982 Legislative History). In pertinent part, the statute indicates that "[t]he court, when sentencing a defendant convicted of [a Title 18 offense] may order ... that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a) (1988). Whether restitution should be ordered and the amount of restitution to be made is left completely within the discretion of the district court upon consideration of the losses of any victim, the financial condition of the defendant and any other relevant factor. *See id.* § 3664(a). A restitution order may be enforced by the United States or a victim provided relief in the order. *Id.* § 3663(h).

No private remedy for victims denied restitution is stated in the Act's language. When a private right of action is not explicitly spelled out in a statute on its face we must gauge "Congress' perception of the law that it was shaping or reshaping." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 378, 102 S.Ct. 1825, 1839, 72 L.Ed.2d 182 (1982). The legislative history that tracks the Act's enactment in 1982, and its subsequent four amendments, fails to reveal any such purpose on Congress' part. *See, e.g.*, H.Rep. No. 100–390, 100th Cong., 1st Sess. 11, *reprinted in*, 1987 U.S.Code Cong & Admin.News 2137, 2147; H.Rep. No. 98–1030, 98th Cong., 2d Sess. 86, *reprinted in*, 1984 U.S.Code Cong. & Admin.News 3182, 3269; 1982 Legislative History, 1982 U.S.Code Cong. & Admin. News at 2536–39.

Although no court has had occasion previously to rule on this specific issue, other decisions support our conclusion that appellant lacks a right to restitution under the

Act. In holding that a restitution order made pursuant to Connecticut State criminal law was not dischargeable in Chapter 7 bankruptcy proceedings, the Supreme Court noted that "[a]lthough restitution does resemble a judgment 'for the benefit of' the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution." *Kelly v. Robinson*, 479 U.S. 36, 52, 107 S.Ct. 353, 362, 93 L.Ed.2d 216 (1986). Restitution orders are primarily a means of punishing and rehabilitating defendants; compensation to the victim is incidental. *See id.* at 53, 107 S.Ct. at 362–63. Further, in *United States v. Brown*, 744 F.2d 905, 909 (2d Cir.), *cert. denied*, 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984), we upheld the restitutionary provisions of the Act under the Seventh Amendment and found that those statutory adjudications are not subject to the constitutional requirements of civil adjudication such as jury fact-finding. The victim as a non-party is accorded only a limited presence at a sentencing proceeding and has no right to appeal an inadequate remedy. *See id.* at 910.

In *United States v. Cloud*, 872 F.2d 846, 855 (9th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989), it was held that the Act permitted restitution to an insurance company—which suffered economic injury by compensating the direct victim, a bank—notwithstanding that the bank had settled all claims against the defendant and the insurance company had executed an agreement with the bank waiving its subrogation rights against the defendant. The court reasoned in *Cloud* that the insurance company did not waive its right to restitution under the Act when giving up its subrogation claims because neither the bank nor the insurance company "had an independently enforceable right to receive restitution under the [Act]." 872 F.2d at 854; *accord United States v. Vetter*, 895 F.2d 456, 459 (8th Cir.1990). *But see United States v. Franklin*, 792 F.2d 998, 1000 (11th Cir.1986) (expressing no view on "whether a victim has an implied right to intervene in a sentencing proceed-

ing ... [or] whether an appeal may be taken to this court from an order denying such intervention or, if intervention is granted, from the district court's final disposition of the restitution issue").

■ Finding no congressional aim in the Act either explicitly or implicitly to provide victims with an enforceable right to obtain restitution, we hold that appellant is outside its zone of interests and without standing to contest the restitution orders entered in the Southern District courts.

## II The Restitution Orders

Because our conclusion that appellant lacks standing to contest the restitution orders entered by the district courts against Grundhoefer and Hausman is one of first impression, prudence dictates that we touch briefly upon their propriety. The Act provides district judges with broad authority to order restitution as part of sentencing and restitution orders are reviewed under an abuse of discretion standard. *United States v. Casamento*, 887 F.2d 1141, 1177 (2d Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990).

Section 3664 provides guidance for the district judge in entering restitution orders:

> The court, in determining whether to order restitution[,] ... shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

Although the district court must "consider" these factors in entering an order of restitution, it need not make explicit findings with respect to each. *See United States v. Golomb*, 811 F.2d 787, 791 (2d Cir.1987); *see also Hughey v. United States*, — U.S. —, 110 S.Ct. 1979, 1984, 109 L.Ed.2d 408 (1990) ("the factors listed in [§ 3664(a) ], including the catchall factor, are intended to guide a court's discretion when it decides whether to award full or partial restitution under [§ 3663]"). A sen-

tencing court is authorized to provide restitution to "any" victim of the *offense*, even those not named in the criminal indictment, *see United States v. Durham*, 755 F.2d 511, 512–13 (6th Cir.1985), but is not bound to reimburse a victim's loss in full, *United States v. Atkinson*, 788 F.2d 900, 903 (2d Cir.1986).

The orders directing that restitution be made for the benefit of the student victims of the Hausman School were not an abuse of discretion. The former students of the Hausman School were victims of defendants' crimes under the Act notwithstanding that they were not named in the charges to which defendants pled guilty. *See Durham*, 755 F.2d at 512–13. Legal Services identified two groups of students who suffered economic injury from defendants' crimes: those enrolled at the school at the time when it closed and who had incurred student loan liability without receipt of a reciprocal benefit and those students owed student loan refunds from the school. Concededly, these economic losses were caused by defendants' fraudulent offenses and establish the students as victims under the Act.

Judge Sweet and Judge Leval both received letters from Legal Services and the trustee's attorney outlining their respective positions vis-a-vis the restitution order. Judge Sweet entertained oral argument from the AUSA, the counsel for the trustee and Legal Services on this issue. Both district court judges considered the losses suffered by the students, unsecured creditors and federal government, the amount of restitution to be made by defendants, and the fact that restitution to the students would indirectly benefit the federal government by saving it the expense of reimbursing institutions for future defaulted student loans and the ancillary administrative costs.

Although each of the district court judges thought that restitution funds in the hands of Legal Services might be paid to students directly, such would be wholly inappropriate. Restitution is available "only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey v. United States*, —— U.S. ——, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990). The specific offense here is conspiracy to defraud the United States and theft concerning programs receiving federal funds. Although the restitution award is only a fraction of the government's potential loss of $24 million, the award in the instant matter is nevertheless substantial, amounting to almost $1 million. Hence, the reduction of students' loan obligations must be accomplished by the restitution money going directly from the trust fund to the United States Department of Education. This will effectively reduce individual students' loan obligations—the name of the student and the amount of reduction to be provided by Legal Services—when the government receives the funds.

■ Consequently, the factors enumerated in § 3664 as well as another relevant factor—relief to the students which would also benefit the federal government—were carefully considered. In these circumstances, we cannot say the restitution orders providing relief to the student victims to the exclusion of the unsecured creditors represented by the bankruptcy trustee was an abuse of discretion.

The trustee asserts that our reversal of restitution orders that required narcotics offenders to "pay restitution 'to a fund which shall be utilized for the medical treatment, rehabilitation and restitution of persons injured by addiction to narcotics in the 1980s' " in *Casamento* warrants reversal here. 887 F.2d at 1177. *Casamento* is distinguishable. In that case the orders provided restitution to individuals whose injuries had no nexus to defendants' crimes and who were not identifiable from the order. *Id.* at 1177–78. In contrast, here the orders benefit the students who suffered direct economic injury from defendants' crimes, most of whom have been identified by a list provided to Legal Services by the New York State Education Department.

We also reject the trustee's argument that reversal is mandated by *United States v. Weichert*, 836 F.2d 769, 772 (2d Cir.

1988), *cert. denied,* 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 802 (1989), where we held that the sentencing court must make an adjudication under Fed.R.Crim.P. 32 when the defendant disputes the amount of restitution ordered. In the instant matter the amount of restitution is not in dispute because both Grundhoefer and Hausman agreed to pay restitution in the amounts of $740,000 and $1,046,745, respectively, as part of their plea agreements with the government. Thus, *Weichert* and the adjudicatory requirements of Rule 32 are not violated. *Cf. United States v. Berrios,* 869 F.2d 25, 32 (2d Cir.1989) ("[T]he amount of loss to be compensated through restitution must either be conceded by the defendant or be adjudicated by the court."), *amended on other grounds, Hughey,* 110 S.Ct. 1979.

## CONCLUSION

The trustee is without standing to appeal the restitution orders entered as part of the sentences imposed on defendants Grundhoefer and Hausman because he is outside the zone of interests protected by the Act. Further, were we to decide the issue of the propriety of the orders providing relief to the student victims to the exclusion of the unsecured creditors represented by the trustee, we would affirm and hold that the orders were not an abuse of the district courts' discretion. But because appellant intervenor trustee is without standing to challenge defendants' sentences, his appeal is dismissed.

Appeal dismissed.

WINTER, Circuit Judge, dissenting:

I respectfully dissent.

For the reasons stated in Judge Cardamone's opinion, I agree that a putative victim is not a party to the determination of whether a criminal sentence should include an order of restitution or to the determination of the amount of that restitution. I also agree that the touchstone of appellate

standing is injury in fact. However, once an award of restitution has been finally determined, the defendant loses all legal interest in subsequent proceedings concerning that award. When the parties to such a subsequent proceeding are competing claimants seeking part of the restitution fund, such parties can, I believe, show injury in fact.

The instant case illustrates this principle. Both defendants agreed to restitution in a stipulated amount and thereafter had no interest in the distribution of the fund. Had the district judges then determined that the trustee should get the award, the students would have been left with a liability on the loans, and the government would have suffered losses if, as seems likely, the loans were uncollectible.[1] Giving the award to the trustee seems to me to be a direct, palpable injury, and I see no reason why either the students or the government should not have been able to appeal such a decision. For similar reasons, I would allow the trustee to appeal.

However, I agree with my colleagues that the award should be used only to decrease the students' liability on the loans.

1. The government appears to have agreed before Judge Sweet to a cash distribution of some of the award to the students rather than its use to pay off the loans. On this appeal, it stood mute. Given that the taxpayers stand to lose

some $24 million as a result of the defendants' crimes, the government's seeming indifference to the distribution of the $1 million in restitution is not to be applauded.