UNITED STATES of America,

v.

M. Laurie CUMMINGS, Defendant.

No. 01 CR. 53(DLC).

United States District Court,
S.D. New York.

March 1, 2002.

Bonnie B. Jonas, Andrew C. McCarthy, Joshua Klein, Office of the United States Attorney, Southern District of New York, New York City, for Plaintiff.

T. Barry Kingham, Peter Fleming, Jr., Diana Ciaputa, Curtis, Mallet–Prevost, Cold & Mosle, LLP, New York City, for Defendant.

## OPINION AND ORDER

COTE, District Judge.

On September 4, 2001, defendant Laurie Cummings ("Cummings") pleaded guilty to three counts of an indictment in connection with her participation in a conspiracy to conceal trade promotion underaccruals at Aurora Foods Inc. ("Aurora") between 1998 and 2000. Aurora has requested an award of restitution of $66,855,985 for losses it incurred as a result of the crimes, and Cummings has opposed the award of any restitution. For the reasons that follow, restitution in the amount of $2,583,840 may be awarded to Aurora for losses it sustained when it was required to file restated financial statements for 1998 and 1999, after the unlawful concealment of the underaccrual was discovered.

## BACKGROUND

Defendant Cummings was a partner in Dartford Partners ("Dartford"), a company that held approximately eleven percent of the stock of Aurora. Aurora is a Delaware company engaged primarily in the acquisition and marketing of private brand name food products. Aurora conducted an initial public offering and was listed on a public stock exchange on July 1, 1998. Dartford was engaged to manage Aurora until July 2000, and Cummings was the Chief Financial Officer of Aurora from the time Aurora went public.

Between 1998 and 2000, Aurora's trade promotion expenses—financial incentives offered to encourage retailers to obtain and sell Aurora's products—substantially exceeded the amounts that had been allocated to promotion reserves. By at least June or July of 1999, management at Aurora was aware that the company's trade promotion account was very substantially underaccrued. In furtherance of a decision to prevent disclosure of the underaccrual, Cummings engaged in a series of internal manipulations of Aurora's financial records. Specifically, Cummings and others under her direction made inadequate accruals for known trade promotion expenses, failed to record accrued trade promotion expenses, and reclassified trade promotion expenses as receivables. This reclassification of expenses to receivables amounted to many millions of dollars by February 2000. Cummings took steps to conceal these manipulations and the underaccrual from Aurora's auditors and failed to disclose the underaccrual to Chase Manhattan Bank ("Chase") in connection with Aurora's application for a loan to purchase Lender's Bagels. In addition, Cummings signed and filed with the Securities and Exchange Commission ("SEC") quarterly reports (Forms 10–Q) that reflected the manipulated financial figures

and concealed the trade promotion under-accrual.

On or about February 18, 2000, Aurora announced that it had uncovered evidence of inappropriate accounting practices in 1998 and 1999, and that it would issue a restated financial statement for those years. Cummings resigned from her position as CFO of Aurora on February 17, 2000. In a restatement issued in April 2000, Aurora revealed that the company had understated trade promotion expenses by $28.5 million in 1998, and by $15.2 million in the first three quarters of 1999.

A superceding indictment filed on August 2, 2001, charged Cummings in ten counts. Pursuant to a plea agreement signed on September 4, 2001, Cummings agreed to plead guilty to Counts One, Two and Ten. Count One charged Cummings with a violation of 18 U.S.C. § 371, namely, conspiracy to (a) commit securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. § 240.10b–5; (b) file false and misleading documents with the SEC in violation of 15 U.S.C. § 78ff; (c) falsify Aurora's books and records in violation of 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5) and 78ff and 17 C.F.R. § 240.13b2–1; (d) make false and misleading statements to Aurora's auditors in violation of 15 U.S.C. § 78ff and 17 C.F.R. § 240.13b2–2; (e) defraud financial institutions in violation of 18 U.S.C. § 1344; and (f) make false statements to financial institutions in violation of 18 U.S.C. § 1014. Count Two charged Cummings with securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. § 240.10b–5; and 18 U.S.C. § 2. Count Ten charged her with making false statements in connection with a credit application in violation of 18 U.S.C. § 1014. Cummings's plea agreement did not address the issue of restitution, other than noting that the maximum sentence for each of the three counts to which she agreed to plead guilty included "mandatory restitution to any victims of the offense." She was also advised of the duty to pay restitution at the time of her plea.

Civil class action suits against Aurora were brought by shareholders and certain subordinated bondholders in the Northern District of California. Aurora settled the suits by providing a settlement package consisting of stock and cash. Aurora contributed stock worth approximately $10 million to the settlement package, and its D & O insurance companies contributed approximately $26 million in cash. Each D & O insurer executed a waiver of all rights to subrogation or reimbursement from Aurora.

Aurora obtained the stock necessary to settle the suit with the shareholders pursuant to a settlement agreement between Aurora, Cummings, co-defendant Ian Wilson ("Wilson") and co-conspirator Ray Chung ("Chung"). Pursuant to this agreement, Wilson, Chung and Cummings agreed to transfer 2,751,053 shares of Aurora common stock to Aurora. The settlement was "intended as and constitute[s] a settlement and compromise of disputed claims including to facilitate the settlement of the" civil class action. The agreement contained a mutual release of any and all claims or rights "of any type, kind or nature whatsoever ... which any Party has or may hereafter have or may anytime have had against the other" relating to the fraud.

Although Aurora is not a party to this criminal proceeding, a victim is accorded a presence, albeit "only a limited presence" at sentencing. *United States v. Grundhoefer*, 916 F.2d 788, 793 (2d Cir.1990). Aurora has requested restitution in the amount of $66,855,985 for damages it suffered as a result of the defendant's fraud. Specifically, Aurora requests restitution for damages incurred (1) in preparing its

April 2000 restated financials for 1998 and 1999; (2) as a result of Aurora's default on senior debt instruments; (3) as a result of Aurora's default on subordinated bonds; (4) as a result of Aurora's liquidity crisis caused by the extra costs of preparing the restatement and paying its debt obligations; and (5) in connection with the settlement of the class action lawsuits. Specifically, Aurora alleges the following losses:

(1) *Restatement:* In preparing the restatement, Aurora paid $2,256,251 in accounting fees, $311,917 for assistance from Deloitte & Touche, and $15,672 for printing charges.

(2) *Default on Senior Debt Instruments:* Aurora paid $11,662,794 to senior debt holders in exchange for agreements not to accelerate the debt after Aurora's default. Aurora also paid $411,704 in legal fees to amend the debt agreements. In addition, Aurora was forced to accept a higher rate of interest and, by August 31, 2001, had paid $16,399,628 in additional interest on the instruments.

(3) *Default on Subordinated Bonds:* Aurora transferred 6,965,736 shares to holders of subordinated bonds in exchange for waivers of the bondholders' right to accelerate repayment after Aurora's default. As of September 27, 2001, the shares were valued at $25,773,223. Aurora was also obligated to pay $817,345 and $98,102 in legal and accounting fees in connection with the agreements; $26,195 for an information agent; $51,425 in printing costs; $180,000 for tax advice; and $4,428,649 for financial advice.

(4) *Liquidity Crisis:* To generate cash to service its debt and pay operational expenses, Aurora entered into an agreement with Chase, pursuant to which Chase purchased accounts receivable at a discount in exchange for $50 million. As of the date of its submission, Aurora had paid $5,081,853 in discounts and an addition $250,000 for a fairness opinion. Aurora also obtained additional financing at a cost of $1,159,578.

(5) *Settlements:* Class action shareholders and certain bondholders[1] received approximately $26 million in cash and $10 million in common stock in settlement of their claims. Aurora was responsible for the stock component of this settlement. Aurora notes that it received stock from Cummings and other defendants in settlement of its claims, and that "[d]epending on the market price for Aurora shares" at the time that they are distributed, "there is a possibility that Aurora may be left with a net positive recovery from the shares received." Recent submissions by the parties indicate that the net gain to Aurora may be as much as $3.8 million.

Cummings's Presentence Report ("PSR") reflects a guidelines calculation of fifty-seven to seventy-one months of incarceration; two to three years supervised release for counts one and two and three to five for count ten; a fine of $10,000 to $2,000,000; and "full restitution to the victim ... in the amount of $66,855,985," jointly and severally with her co-defendants. The PSR recommends that restitution be paid in monthly installments of 10% of Cummings's gross monthly income commencing thirty days after judgment or release from custody if a sentence of imprisonment is imposed.

Cummings contends that Aurora is not a "victim" under 18 U.S.C. §§ 3663 ("Section 3663"), 3663A ("Section 3663A"), or 3664

---

1. The bondholders who sued Aurora were those holding subordinated bonds who had not consented to the settlement described in paragraph (3) ("Default on Subordinated Bonds"), *supra.*

("Section 3664").[2] Second, Cummings argues that even if Aurora is a victim, the damages Aurora cites are not "losses" for which restitution may be awarded. Third, Cummings maintains that Aurora waived all right to receive restitution when it executed a settlement agreement releasing Cummings from civil liability for her participation in the fraud.

## DISCUSSION

### 1. Statutory Framework

"Federal courts have no inherent power to order restitution. Such authority must be conferred by Congress." *United States v. Helmsley*, 941 F.2d 71, 101 (2d Cir. 1991).[3] In addition to the court's authority to order restitution as a condition of probation or supervised release under 18 U.S.C. §§ 3563(b)(2) and 3583(d), *see Unit-*

---

**2.** Sections 3663 and 3664 were substantially amended, and Section 3663A was added, with the passage of the Mandatory Victim Restitution Act ("MVRA") on April 24, 1996.

**3.** Where Sections 3663 and 3663A do not differ in material ways in connection with the issues raised by this sentencing decision, the Court will rely on caselaw interpreting one as well as the other.

**4.** Section 5E1.1 of the Sentencing Guidelines provides that if there is an identifiable victim, the court

> *shall*—(1) enter a restitution order for the full amount of the victim's loss, if such order is authorized under 18 U.S.C.... § 3663, or § 3663A ...; or (2) impose a term of probation or supervised release with a condition requiring restitution for the full amount of the victim's loss, if the offense is not an offense for which restitution is authorized under 18 U.S.C. § 3663(a)(1) but otherwise meets the criteria for an order of restitution under that section.

U.S. Sentencing Guidelines Manual § 5E1.1(a) (2001) (emphasis supplied).

**5.** There appears to be some tension between the discretionary language in Section 3663 and the mandatory language in Section 3664

---

*ed States v. Bok*, 156 F.3d 157, 166 (2d Cir.1998), restitution is authorized by the MVRA, *see United States v. Spambanato*, 876 F.2d 5, 7 (2d Cir.1989) (per curiam).[4]

Section 3663 allows a sentencing court to impose an order of restitution when imposing sentence for offenses under Title 18, certain drug offenses and certain violations of transportation laws. It provides:

> The court, when sentencing a defendant *convicted of an offense under [Title 18]*, [certain sections of] the Controlled Substances Act ..., or [certain sections of] Title 49 [the transportation laws], ... *may order*, in addition to ... any other penalty authorized by law, that the defendant make *restitution* to any victim of such offense ....

18 U.S.C. § 3663(a)(1)(A) (emphasis supplied).[5]

---

of Title 18, United States Code. Restitution awards under the MVRA are implemented and enforced according to the provisions of Section 3664. 18 U.S.C. §§ 3663(d) and 3663A(d). Section 3664 provides:

> In *each order* of restitution, the court shall order restitution *to each victim* in the *full amount* of each victim's losses as determined by the court and *without consideration of the economic circumstances of the defendant*.

*Id.* § 3664(f)(1)(A) (emphasis supplied).

The tension between Sections 3663 and 3664 may be resolved in the following way. Once the court has determined that restitution should be awarded under either Section 3663 or Section 3663A, the court is required to award restitution for the full amount of the victim's losses. In other words, the court's first determination is *whether* there is to be an award of restitution. In making this discretionary determination under Section 3663, the court must consider the defendant's financial circumstances. *Id.* § 3663(a)(1)(B)(i)(II). Once the decision to award restitution has been made, however, restitution in the full amount of the victim's loss is required. The court should, of course, take the defendant's financial circumstances into account in setting the payment schedule. *Id.* § 3664(f)(2)(A)-(C).

Section 3663A requires a sentencing court to order payment of restitution when sentencing a defendant convicted of, or when there has been a plea agreement relating to, (1) a crime of violence; (2) an offense against property under Title 18; (3) knowingly operating or renting a place for the manufacturing or distribution of controlled substances (21 U.S.C. § 856(a)); [6] or (4) a crime involving consumer product tampering. It provides, in pertinent part, that

> the court *shall order*, in addition to … any other penalty authorized by law, that the defendant make restitution to the victim of the offense.

*Id.* § 3663A(a)(1) (emphasis supplied).

> (c)(1) This section *shall apply in all sentencing proceedings for convictions of*, or plea agreements relating to charges for, any offense—
>
> (A) that is—
>
> (i) a crime of violence, as defined in section 16;
>
> (ii) *an offense against property under this title* [Title 18 of the United States Code], or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), *including any offense committed by fraud or deceit;* or
>
> (iii) an offense described in section 1365 [of Title 18 of the United States Code] (relating to tampering with consumer products); *and*
>
> (B) *in which an identifiable victim* or victims *has suffered a* physical injury or *pecuniary loss.*
>
> (2) In the case of a plea agreement that does not result in a conviction for

an offense described in paragraph (1), this section shall apply only if the plea specifically states that an offense listed under such paragraph gave rise to the plea agreement.

*Id.* § 3663A(c)(1).

▄▄▄ Again, Cummings pleaded guilty, and is being sentenced for, violating 18 U.S.C. § 371 (conspiracy); 15 U.S.C. §§ 78j(b) and 78ff (securities fraud); and 18 U.S.C. § 1014 (false statement to lending institution). Section 3663 allows for an order of restitution here, but only with respect to Cummings's plea of guilty to Title 18 offenses. *United States v. Fore*, 169 F.3d 104, 110 (2d Cir.1999). Cummings pleaded guilty to two counts under Title 18—conspiracy and making a false statement to a lending institution.[7] Although the objects of the conspiracy to which Cummings pleaded guilty do not independently authorize restitution, since "conspiracy … [is a] crime[ ] distinct from [its] underlying predicate acts and purposes, and involve[s] additional harms," restitution may be awarded for a violation of the conspiracy statute even when it could not be awarded for the underlying predicates. *Helmsley*, 941 F.2d at 101 (applying principle where predicates were tax-related offenses). For example, restitution may be ordered for conspiracy to commit securities fraud even though it could not be ordered under Section 3663 for a substantive violation of the securities laws.

▄▄▄ Restitution is also authorized under Section 3663A to the extent Cummings has pleaded guilty to an offense "against property" under Title 18 as that term is used in

---

**6.** Section 3663A was amended on October 17, 2000 to add 21 U.S.C. § 856(a) to the list of enumerated crimes for which restitution is mandatory. Mandatory Victim's Restitution Act, sec. 3613(d), § 3663A(c)(1)(A)(ii), Pub.L. No. 106–310, 114 Stat. 1101 (2000).

**7.** While Count Two includes a reference to 18 U.S.C. § 2, that section allows liability to be imposed for aiding and abetting in the commission of another offense, in this case, a Title 15 offense.

that section. It appears that an offense "against property" applies to those offenses in which physical or tangible property, including money, is taken (or attempted to be taken) by theft, deceit or fraud. This conclusion is buttressed by the use of the word "property" in another context in the statute and by case law applying Section 3663A.

■ The term "property" is not only used, as noted above, to describe the kinds of offenses to which Section 3663A applies (and thus for which restitution is mandatory), but also in describing the preferred method of restitution under the MVRA when there is damage to or a loss of "property." When there is a loss of "property," Sections 3663 and 3663A dictate that restitution is to be made through return of the property or payment of its value. These sections provide that an order of restitution

shall require that such defendant

(1) in the case of an *offense resulting in damage to or loss or destruction of property* of a victim of the offense—

(A) *return* the property to the owner of the property or someone designated by the owner; *or*

(B) if return of the property under subparagraph (A) is impossible, impracticable, or inadequate, *pay an amount equal to—*

(i) the greater of—

(I) *the value* of the property on the date of the damage, loss, or destruction; or

(II) the value of the property on the date of sentencing, less

(ii) the value (as of the date the property is returned) of any part of the property that is returned;

*Id.* §§ 3663(b) and 3663A(b) (emphasis supplied). The term "property," as used in Sections 3663(b) and 3663A(b), clearly means tangible property. There is a presumption that "the same term appearing in different portions of a single act is taken to have the same meaning in each appearance." *United States v. Pornes–Garcia,* 171 F.3d 142, 147 (2d Cir.), *cert. denied,* 528 U.S. 880, 120 S.Ct. 191, 145 L.Ed.2d 161 (1999). As an initial matter, then, and absent an indication that the different statutory provisions serve different purposes, *id.,* the term "offense against property" used in Section 3663A(c)(1) to describe the Title 18 offenses for which restitution is mandatory should also mean an offense against "tangible property." [8]

Although the Second Circuit has apparently not yet defined the term "offense against property" contained in Section 3663A, it has applied Section 3663A—and thus found that restitution was mandatory for convictions of the following Title 18 offenses: in *United States v. Boyd,* 222 F.3d 47, 49 (2d Cir.2000) (defendants convicted of mail and wire fraud for making false statements and representations to induce customers to invest in gemstones at inflated prices); *United States v. Ismail,* 219 F.3d 76, 77 (2d Cir.2000) (defendant pleaded guilty to embezzling funds from customer accounts); and *United States v. Maurer,* 226 F.3d 150 (2d Cir.2000) (per curiam), *aff'g* 76 F.Supp.2d 353, 355 (S.D.N.Y.1999) (defendant convicted of issuing fictitious invoices to outside payee, and pleaded guilty to cashing deceased grandfather's social security check and to passing forged checks to banks). In sum, consistent with the presumption that an "offense against property" is an offense against tangible property, all of the restitution awards under Section 3663A that

---

**8.** Traditionally, the term "offense against property" was "restricted to personal property." *Black's Law Dictionary* 1109 (7th ed.1999).

have been affirmed by the Second Circuit have involved the theft of money, a form of tangible property.

■ It would appear, therefore, that Section 3663A would also apply to counts one and ten to the extent they relate to the efforts to defraud Chase and to the making of false statements to Chase in connection with Aurora's credit application. The remaining objects of Count One's conspiracy charge—securities fraud, filing false documents with the SEC, falsifying Aurora's books and records, and making misleading statements to Aurora's auditors—do not relate sufficiently to wrongdoing in connection with tangible property to trigger coverage by Section 3663A.

## 2. *Aurora's Status as Victim*

The defendant contends that Aurora is not a victim under the MVRA. The MVRA defines a "victim" as

a person *directly and proximately harmed* as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person *directly harmed* by the defendant's conduct in the course of the scheme, conspiracy, or pattern.

*Id.* §§ 3663(a)(2) and 3663A(a)(2) (emphasis supplied). Restitution is therefore required for any person "directly and proximately harmed" as a result of Cummings's false statements to Chase (18 U.S.C. § 1014), as well as any person "directly harmed" by her conduct in the course of the conspiracy (18 U.S.C. § 371).

■ Aurora is not a victim of Cummings's violation of 18 U.S.C. § 1014. The company was not harmed, much less directly or proximately, by Cummings's false statements to Chase in connection with the loan Aurora applied for and obtained to purchase Lender's Bagels. Aurora received the loan and it does not claim a loss in connection with Cummings's false statements to Chase.[9]

■ Aurora is, however, a victim of Cummings's conduct in the course of the conspiracy to conceal the underaccrual in Aurora's trade promotion expense account if the company was "directly harmed" by that conduct. The fact that Aurora is not named as a victim in the superceding indictment does not prevent it from being a victim under the MVRA. *Grundhoefer*, 916 F.2d at 794. Further, contrary to the defendant's contention, it is not necessary that the alleged victim *incurred damages in the course of* the scheme, conspiracy or pattern. Rather, the question is whether the alleged victim was *directly harmed by the defendant's conduct* that occurred in the course of that conspiracy. Cummings's conduct in the course of the conspiracy included

- making inadequate accruals for known record trade promotion expenses and failing to record accrued trade promotion expenses,
- reclassifying trade promotion expenses as receivables,
- concealing the underaccrual from Aurora's auditors and lending institutions, and
- filing with the SEC false quarterly and annual reports.

Aurora was directly harmed by Cummings's financial manipulations to conceal the underaccrual. For instance, as a re-

---

9. Aurora appears to claim that the damages it suffered in connection with the false statements to Chase are the damages incurred in connection with restructuring debt under the senior debt instruments and subordinated bonds. For reasons described below, these losses are not recoverable.

sult of Cummings's financial manipulations and active concealment of the underaccrual, and her false statements to Aurora's auditors and the SEC, Aurora was forced to issue restated financials for the years 1998 and 1999. For the reasons discussed above, however, it would appear that restitution for this conduct is only appropriate under Section 3663, and not under Section 3663A, since the statutory objects of the conspiracy charge which relate to this conduct are not offenses "against property" as that term is used in Section 3663A.

### 3. Aurora's Losses as Victim

Having decided that Aurora is a victim under the MVRA, it is necessary to determine whether there are losses that may be compensated by an order of restitution. Section 3663 authorizes restitution for "the amount of the *loss* sustained by each victim as a result of the offense." 18 U.S.C. § 3663(a)(1)(B)(i)(I) (emphasis supplied). Section 3664(f)(1)(A) of Title 18, United States Code, provides that "in each order of restitution, the court shall order restitution to each victim in the full amount of each victim's *losses*." *Id.* § 3664(f)(1)(A) (emphasis supplied). The Supreme Court has held that restitution is authorized only for "the loss *caused by* the specific conduct that is the basis of the offense of conviction." *Hughey v. United States,* 495 U.S. 411, 413, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) (emphasis supplied).[10] The Second Circuit has added that restitution may only be ordered "for losses that [were] ... *directly caused* by the conduct composing the offense of conviction," *United States v. Silkowski,* 32 F.3d 682, 689 (2d Cir.1994) (emphasis supplied), and then, only for the

victim's "actual loss," *United States v. Germosen,* 139 F.3d 120, 130 (2d Cir.1998); *see also United States v. Carboni,* 204 F.3d 39, 47 (2d Cir.2000). Actual loss is defined under the Sentencing Guidelines as "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S. Sentencing Guidelines Manual § 2B1.1, cmt. n. 2(A)(ii) (2001). Reasonably foreseeable pecuniary harm means harm "that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." *Id.* at cmt. n. 2(a)(iv).

The causal nexus—as defined under the Sentencing Guidelines—between the loss and the conduct, resembles the Second Circuit's definition of loss causation in the context of securities fraud. Loss causation "has been likened to the tort concept of proximate cause." *Suez Equity Investors, L.P. v. Toronto–Dominion Bank,* 250 F.3d 87, 96 (2d Cir.2001). It requires proof that the loss suffered was a "foreseeable consequence" of the wrongdoing. *Id.* A loss causation analysis

> typically examines how directly the subject of the fraudulent statement caused the loss, and whether the resulting loss was a foreseeable outcome of the fraudulent statement. Related factors include whether intervening causes are present, and the lapse of time between the fraudulent statement and the loss.

*Id.* (internal citations omitted).

In evaluating restitution claims, other Circuits have adopted a similar fact intensive approach, asking whether the specific loss claimed by the victim is too remote, either factually or temporally, from the

---

**10.** Since *Hughey,* Congress " 'broadened the scope of restitution from losses attributable solely to the offense of conviction to all losses caused in the course of a defendant's criminal conduct, *whether the defendant is convicted of each of those offenses or not.*' " *Boyd,* 222

F.3d at 50 (citation omitted) (emphasis in original). The expanded scope of the MVRA is not relevant here, however, because Aurora does not allege losses that were caused through conduct to which Cummings did not plead guilty.

conduct forming the basis of the offense. The First Circuit, for example, has adopted a causation standard under which

> the government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally).

*United States v. Vaknin,* 112 F.3d 579, 590 (1st Cir.1997).[11] The Ninth Circuit has similarly held that "the loss cannot be too far removed" from the criminal conduct that caused the loss. *United States v. Gamma Tech Indus., Inc.,* 265 F.3d 917, 928 (9th Cir.2001). The "causal chain [between loss and conduct] may not extend so far, in terms of the facts or the time span, as to become unreasonable." *Id.* The Tenth Circuit, as well, has indicated that even consequential damages may be the proper subject of a restitution award if the losses are the direct result of the defendant's conduct. *See United States v. Patty,* 992 F.2d 1045, 1049 (10th Cir.1993) (refusing to reimburse attorney's fees). *But see United States v. Shepard,* 269 F.3d 884, 887 (7th Cir.2001) (consequential damages are not direct losses).

In cases in which the offenses were not offenses "against property," the Second Circuit, as well, has affirmed restitution awards to victims and third parties for losses that were the direct result of the defendant's conduct. *See, e.g., Carboni,* 204 F.3d at 42, 46–47 (did not disturb that part of award of restitution representing actual loss to bank based on defendant's default on loan when increases in credit had been fraudulently obtained); *United States v. Stanley,* 54 F.3d 103, 104, 108 (2d Cir.1995) (affirming award of restitution to trust company that was forced to buy back bonds from customers at inflated price after defendant fraudulently concealed decrease in price of bonds); *United States v. Rice,* 954 F.2d 40, 41, 44 (2d Cir.1992) (affirming award of restitution to title company that was "obligated by the terms of its policies to purchase the unpaid balance" of bank mortgages that the defendant had obtained by fraud). *See also United States v. Paccione,* 949 F.2d 1183, 1188, 1210 (2d Cir.1991) (noting, in illegal dumping case, that "in the absence of the forfeiture agreement, the court could have ordered defendants to make restitution to CSX [Realty Corporation] and [New York] City, the victims of their racketeering activity," for losses that included the decline in City revenue due to the City's loss of the defendants' business and the cost to CSX of cleaning up the property that was the site of the illegal dumping).

■ One loss sustained by Aurora—and directly caused by Cummings's conduct— is the loss the company incurred in preparing the April 2000 restatement of the company's 1998 and 1999 financials. The conduct forming the basis of Cummings's conviction for conspiracy, including her active concealment of the underaccrual by manipulating Aurora's financial records and misleading the company's auditors, was the direct cause of Aurora's restatement expenses. In preparing the restatement, Aurora was required to determine and correct the material misstatements

---

11. As the court in *Vaknin* explained, the legislative history of the 1990 amendments to Section 3663, which added the term "directly," does not limit the causal nexus in any meaningful way:

> The use of "directly" precludes, for example, an argument that a person has been harmed by a financial institution offense that results in a payment from the insurance fund because, as a taxpayer, a part of a person's taxes go to the insurance fund.

*Vaknin,* 112 F.3d at 586–87, n. 5 (quoting H.R.Rep. No. 681(I), at 177 n. 8, *reprinted in* 1990 U.S.C.C.A.N. 6472, 6583 n. 8).

that Cummings and others had made in connection with the earlier financial statements. It was reasonably foreseeable that a restatement would be necessary when the underaccrual was eventually disclosed, and there were no intervening causes between Cummings's conduct and Aurora's need to file a restatement. The losses claimed are not too attenuated, either factually or temporally, from the conduct forming the basis of the offense to which Cummings has pleaded guilty. Further, even if "but-for" causation were also required, that element is satisfied here; had Cummings not concealed the underaccrual, Aurora would not have had to issue a restatement.

■ Conversely, Aurora's need to renegotiate its covenants with senior debtholders or bondholders and its liquidity crisis may not have been the result of Cummings's fraudulent concealment of Aurora's true financial situation. Absent a more explicit explanation of how Cummings's fraudulent conduct—rather than Aurora's actual financial condition— "caused" Aurora's default or lack of liquid-

ity, these losses cannot reasonably be assumed to be a direct result of Cummings's conduct.[12] Had there been no concealment, Aurora may have experienced a liquidity crisis and may have been required to renegotiate the terms of these instruments, albeit at an earlier point in time. The fact that the company was a "vehicle" for the fraud perpetrated by Cummings and her co-conspirators does not mean that the fraud caused the losses. While these losses followed the disclosure of the fraud, the connection between the default and the liquidity crisis on the one hand, and the criminal concealment on the other, is too speculative to support an award of restitution.[13] Cummings and her co-conspirators did not create the underlying financial problems at the company; rather, they concealed the extent of these problems.

■ Aurora has also claimed a loss of $10 million resulting from its payments to shareholders in settlement of the securities fraud class action suits. Aurora's public shareholders were directly harmed by,

12. Aurora has recently provided additional information to support an award of $1,369,687.50, an amount that represents a portion of fees that Aurora paid to senior debt holders in connection with obtaining their agreement to enter into an amendment of an existing credit agreement with Aurora, which amendment waived Aurora's default on certain covenants. Aurora contends that the senior debt holders would not have extended to Aurora a certain loan of $275 million but for the false financial statements presented by Cummings and her co-conspirators on behalf of Aurora. Aurora argues that even if its actual financial condition, and not the defendant's fraud, was the cause of the default on various covenants in the credit agreement, these identified fees for the amendment were nonetheless directly attributable to that loan and thus to the false financial statements made to obtain the loan. While Aurora's additional submission presents a far stronger case for finding direct causation, there re-

main too many open issues, including whether such fees were reasonably foreseeable.

13. At most, Cummings's conduct may have increased the cost of renegotiating Aurora's agreements with debt- and bondholders or aggravated the company's liquidity crisis. Ascertaining the amount by which Cummings's conduct increased Aurora's losses would, however, require a determination of Aurora's losses had the underaccrual been timely disclosed. Such a finding would necessarily rest on a variety of assumptions, including assumptions about how the disclosure would have been made, how the market would have reacted, and if and/or when Aurora would have been in default or experienced a liquidity crisis. "[T]he complication and prolongation of the sentencing process resulting from the fashioning of [such] an order of restitution . . . outweighs the need to provided restitution to any victims." 18 U.S.C. § 3663(a)(1)(B)(ii).

and their loss directly resulted from, the conduct of Cummings and her co-conspirators. Aurora compensated the shareholders, however, for their losses as part of the settlement of the class action litigation.[14] In turn, Cummings and her co-defendants have already reimbursed Aurora for its payments to the shareholders. Based on the facts presented to the Court, the shareholder loss was in the approximate amount of $10 million dollars and the stock payments made by Cummings and her co-conspirators to Aurora for payment to the shareholders were in excess of $10 million dollars. Because restitution may not result in double recovery, the shareholders are prevented from recovering for their losses a second time through an award of restitution. *See, e.g., Fore,* 169 F.3d at 110; U.S. Sentencing Guidelines Manual § 5E1.1(b)(1) (no restitution "when full restitution has been made"). Further, Aurora is not entitled to receive an award of restitution for the amounts paid to the shareholders. While a "person who provided ... compensation" to a victim may be awarded compensation, 18 U.S.C. § 3664(j)(1); *see also United States v. Malpeso,* 126 F.3d 92, 95 (2d Cir.1997), Aurora, here, suffered no loss. Although the company transferred compensation worth approximately $10 million to class action shareholders, it appears that it received stock worth more than $10 million from Cummings and her co-conspirators.

In sum, the MVRA allows an award of restitution to Aurora only for those losses caused by the need to issue restated financials. These are the only losses directly caused by Cummings's fraudulent conduct that may not yet have been fully reimbursed.[15] Cummings contends nonetheless that restitution for even these losses is barred by the provisions in Sections 3663 and 3663A that describe the methods of restitution in cases of property loss. It argues that unless restitution can be made through either a return of or a valuation of property, there can be no award of restitution. It contends that there can never be an award of consequential damages, such as the cost of the restatement of Aurora's 1998 and 1999 financials, under either statute.

 Sections 3663 and 3663A provide that when an offense has "result[ed] in ... loss ... of property of a victim of the offense," the order of restitution shall require the defendant to return the property or pay an amount equal to the value of the property. 18 U.S.C. §§ 3663(b)(1) and 3663A(b)(1). At least three Circuits, reading this statutory language, have held that it limits restitution in cases of stolen or fraudulently taken property to the return or the value of the property, and bars an award of consequential damages, such as accounting and attorney's fees, as restitution. *See, e.g., United States v. Schinnell,* 80 F.3d 1064, 1070–71 (5th Cir.1996) (refused to award accounting costs for reconstructing bank statements in employee em-

14. The class action litigation was brought on behalf of not only the shareholders, but also certain subordinated debt holders who did not agree to be included in the restructuring of debt Aurora had negotiated with other debt holders. From the figures provided by Aurora and Cummings, it appears that the funds to pay the bondholder plaintiffs came from Aurora's insurers. In any event, for reasons already explained, neither those bondholders nor the insurance companies are entitled to restitution from Cummings since it has not

been shown that her conduct caused their loss.

15. Should it be determined that the amount already provided to Aurora by Cummings and her co-conspirators was sufficient to cover not only the $10 million payment to the class action shareholders but also the cost of the restatement, then there will be no need for an order of restitution.

bezzlement case); *Gov't of the Virgin Is. v. Davis*, 43 F.3d 41, 45–46 (3d Cir.1994) (refusing to award attorneys' fees incurred in effort to recover funds taken from estate through fraud); *United States v. Mullins*, 971 F.2d 1138, 1147 (4th Cir.1992) (refusing to award investigator's and attorneys' fees from effort to recover equipment taken through fraud). *But see United States v. Akbani*, 151 F.3d 774, 779–80 (8th Cir.1998) (reading "property" to refer only to physical property, and thus, awarding attorneys' fees incurred from check-kiting scheme). These provisions in Sections 3663(b)(1) and 3663A(b)(1) are not, however, inconsistent with an award of proximately caused damages, including fees paid to accountants, when losses are unrelated to the loss or destruction of physical property, including money. As we have already seen, courts have awarded restitution of consequential damages in other cases. Such awards reflect the statutory requirement that the court "shall consider" the amount of loss each victim sustains as a result of an offense when determining whether to award restitution. 18 U.S.C. § 3663(a)(1)(B)(i)(I); *see also United States v. Mattice*, 186 F.3d 219, 231 (2d Cir.1999) (purpose of Sections 3663, 3663A and 3664 is "to require full restitution wherever possible") (citation omitted); *United States v. Porter*, 90 F.3d 64, 68 (2d Cir.1996) (same).

### 4. *Settlement and Waiver*

■ Finally, Cummings argues that Aurora and the insurers are precluded from receiving awards of restitution because they waived all rights and claims against Cummings in a civil settlement. Although the Second Circuit has not yet addressed this precise issue, it has found "no congressional aim in the Act either explicitly or implicitly to provide victims with an enforceable right to obtain restitution." *Grundhoefer*, 916 F.2d at 793; *see also Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 702 (2d Cir.2000). While awards of restitution resemble compensatory civil judgments, "[r]estitution orders are primarily a means of punishing and rehabilitating defendants; compensation to the victim is incidental." *Grundhoefer*, 916 F.2d at 793; *see also Maurer*, 226 F.3d at 152; *United States v. Brown*, 744 F.2d 905, 909 (2d Cir.1984). Because a victim or a third party cannot have a legal right to a criminal penalty such as restitution, an award of restitution in a criminal proceeding cannot be waived in a civil settlement, and a civil settlement does not preclude an award of restitution so long as there is no double recovery. *See United States v. Karam*, 201 F.3d 320, 328 (4th Cir.2000); *United States v. Parsons*, 141 F.3d 386, 393 (1st Cir.1998); *United States v. Sheinbaum*, 136 F.3d 443, 447–48 (5th Cir.1998).

### CONCLUSION

For the reasons stated, restitution for Aurora's losses incurred in preparing the April 2000 restatement may be awarded pursuant to 18 U.S.C. § 3663 to the extent that Aurora has not already been compensated by Cummings and her co-conspirators.[16]

SO ORDERED.

---

**16.** If there is any dispute as to the specific amount claimed by Aurora or the amount of net gain to Aurora from any money already provided to it by Cummings and her co-conspirators, the parties will be given an oppor-

tunity to be heard. 18 U.S.C. §§ 3664(d)(5) and (e).